{¶ 1} Defendant-appellant Bahi Kader (Kader) appeals his conviction for conspiracy to commit kidnapping with a one-year firearm specification. After reviewing the parties' arguments and pertinent case law, we affirm.
 {¶ 2} On August 9, 2006, a Cuyahoga County Grand Jury indicted Kader with the following: one count of conspiracy to commit aggravated robbery and one count of conspiracy to commit kidnapping. Each count included one-and three-year firearm specifications.
 {¶ 3} The facts giving rise to the instant case culminated in Kader's arrest on June 23, 2006, in the parking lot of the Bahama Breeze restaurant located at 3900 Orange Place, Beachwood, Ohio.
 {¶ 4} Kenneth Williams (Williams), who entered into a land contract for real property located at 10295 Thompson Rye Circle, Twinsburg, Ohio, and at 5021 East 86 Street, Garfield Heights, Ohio, rented the Twinsburg property to Andrew Johnson (Johnson) and the Garfield Heights property to Johnson's sister.
 {¶ 5} Williams subsequently transferred his interest in the properties to Kader, who obtained his own mortgage financing for the homes. The record reveals, however, that Williams owed Kader additional money in relation to the *Page 4 
transfer of the properties, either $20,000 or $80,000, depending on the testifying witness.
 {¶ 6} According to Williams, he offered to write a check to Kader for payment of the debt, but Kader insisted upon cash. Williams allegedly paid Kader cash, but did not request a receipt. Regardless, Kader believed the debt to be outstanding, giving rise to a dispute between Kader and Williams.
 {¶ 7} On or about June 18, 2006, Kader disclosed to a friend, Said Hamdan (Hamdan), his plan to kidnap Williams to show how serious he was about collecting the outstanding debt.
 {¶ 8} On June 19, 2006, Kader, Hamdan, and Johnson met at Bahama Breeze. Kader, in furtherance of his plan against Williams, asked Johnson for an AK-47. Johnson told Kader that he could not get him an AK-47, but he could get him a gun from his brother, Michael Sims (Sims). Kader, Hamdan, and Johnson agreed to meet again in the Bahama Breeze parking lot on June 23, 2006, in order to provide Kader with the gun.
 {¶ 9} On June 20, 2006, Hamdan contacted authorities and informed them of Kader's plan.
 {¶ 10} On June 23, 2006, Kader and Hamdan drove to Bahama Breeze together. Unbeknownst to Kader, Hamdan agreed to cooperate with authorities and agreed wear a recording device on that day. Kader told Hamdan that he was going to take Williams, tie him up, and torture him. Kader indicated that *Page 5 
he was willing to keep Williams for two to three days to make sure he got his money. They also discussed the need for other supplies including tape, hair nets, gloves, and a silencer.
 {¶ 11} Kader also suggested to Hamdan that perhaps he would shoot himself in the leg and blame Williams for the injury. Kader reasoned that if he could not collect his money at least Williams would have to go to jail.
 {¶ 12} Johnson and Sims drove separately to Bahama Breeze. In the parking lot, Johnson removed a bag with the gun in it from the backseat of Sims' car and placed it in the trunk of Kader's car. Kader, anxious to see the gun, inspected the bag after it was placed in his trunk. Beachwood police arrested Kader, Johnson, and Sims.
 {¶ 13} The case proceeded to jury trial on March 14, 2007. Kader asserted a Crim. R. 29 motion for acquittal. The trial court granted Kader's motion in part, acquitting him on the conspiracy to commit aggravated robbery and the three-year firearm specification attached to the conspiracy to commit kidnapping charge.
 {¶ 14} On March 19, 2007, the jury returned a verdict of guilty of conspiracy to commit kidnapping with a one-year firearm specification attached.
 {¶ 15} On April 19, 2007, the trial court sentenced Kader to a total of three years of imprisonment as follows: one year of imprisonment for the one-year *Page 6 
firearm specification, to be served prior and consecutive to the remaining sentence, and two years of imprisonment for conspiracy to commit kidnapping.
 {¶ 16} On June 29, 2007, Kader filed a notice of appeal and asserted two assignments of error for our review.
 {¶ 17} ASSIGNMENT OF ERROR NUMBER ONE
 "The trial court erred when it failed to grant appellant's motion for judgment of acquittal as to the count of conspiracy to commit kidnapping."
 {¶ 18} Kader argues that the trial court erred when it denied his Crim. R. 29 motion for acquittal as to conspiracy to commit kidnapping.
 {¶ 19} Crim. R. 29(A), which governs motions for acquittal, states:
 "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 20} Furthermore, in reviewing the sufficiency of the evidence, we held:
 "A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. In reviewing for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. The motion `should be granted only where reasonable minds could not *Page 7 fail to find reasonable doubt.'" State v. McDuffie, Cuyahoga App. No. 88662, 2007-Ohio-3421. (Internal citations omitted.)
 {¶ 21} R.C. 2923.01(A) sets forth the offense of conspiracy and reads:
 "No person, with purpose to commit or to promote or facilitate the commission of * * * kidnapping * * *, shall do either of the following:
 (1) With another person or persons, plan or aid in planning thecommission of any of the specified offenses;
 (2) Agree with another person or persons that one or more of themwill engage in conduct that facilitates the commission of any of thespecified offenses."
 {¶ 22} Pursuant to R.C. 2923.01(B), conspiracy also requires a substantial overt act as follows:
 "No person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is alleged and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy. For purposes of this section, an overt act is substantial when it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed."
 {¶ 23} As Kader was charged with conspiracy to commit kidnapping, we must note that kidnapping is set forth as follows pursuant to R.C. 2905.01:
 "(A) No person, by force, threat, or deception * * *, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 * * *
 (2) To facilitate the commission of any felony or flight thereafter; *Page 8 
 (3) To terrorize, or to inflict serious physical harm on the victim or another * * *.
 (B) No person, by force, threat, or deception * * *, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim * * * under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:
 (1) Remove another from the place where the other person is found;
 Restrain another of the other person's liberty * * *."
 {¶ 24} In applying the law to the case sub judice, we find that Kader, with the purpose to commit kidnapping, planned with Johnson, Sims, and Hamdan the commission thereof pursuant to R.C. 2923.01(A).
 {¶ 25} On or about June 18, 2006, Kader commenced his conspiracy to commit kidnapping. On that day, Kader revealed his plan to Hamdan to kidnap Williams in order to show Williams how serious he was about collecting money that he believed was due and owing. (Tr. 314-16.)
 {¶ 26} On June 19, 2006, Kader, Hamdan, and Johnson met at Bahama Breeze. (Tr. 316-17.) Kader initially asked Johnson for an AK-47 and told him that he intended to kill Williams for cheating him out of money. (Tr. 159-60.) Johnson told Kader he could not get him an AK-47, but that he could get him a gun. (Tr. 159, 318.) The parties planned to meet again at Bahama Breeze on June 23, 2006, so that Johnson could give Kader a gun. (Tr. 157.) *Page 9 
 {¶ 27} Sometime thereafter, Hamdan contacted authorities and agreed to assist them in their investigation. (Tr. 329, 332-34.)
 {¶ 28} On June 23, 2006, Kader made a substantial overt act in furtherance of his conspiracy to commit kidnapping pursuant to R.C. 2923.01(B). On that day, Kader and Hamdan drove together to Bahama Breeze to obtain the gun.
 {¶ 29} En route, Kader detailed his plan to kidnap Williams. Kader told Hamdan that in order to show Williams how serious he was about collecting the money, he was going to tie Williams up and torture him for up to two or three days to make sure he got the money. (Tr. 328-29.) Kader discussed how he used to be a member of the Egyptian military police and discussed the torture techniques that he was familiar with. (Tr. 389, 391-94.)
 {¶ 30} Kader and Hamdan also discussed the need for tape, gloves, hair nets, and a silencer in order to execute the plan. (Tr. 337, 376, 381.) Kader and Hamdan planned to pick up those items after picking up the gun at Bahama Breeze. (Tr. 338.)
 {¶ 31} Kader considered shooting himself in the leg and blaming Williams for his injury so that if he could not collect the money at least Williams would go to jail. (Tr. 385-87.) Kader also considered bringing Williams' mother and sister in front of him as further incentive to pay the debt. (Tr. 396.)
 {¶ 32} As such, Kader's plan falls squarely within the kidnapping statute, R.C. 2905.01. Kader planned to remove Williams by force and restrain his *Page 10 
liberty for upwards of two or three days. Kader planned to terrorize Williams and inflict serious physical harm by torturing him. Kader planned to use a gun to execute his plan.
 {¶ 33} Johnson and Sims drove separately to Bahama Breeze on June 23, 2006, in order to give Kader the gun. (Tr. 175-76.) The gun that Johnson gave to Kader on June 23, 2006, belonged to Sims. (Tr. 157.) Johnson called Sims earlier that day asked him to bring the bag with the gun to Bahama Breeze. (Tr. 242.)
 {¶ 34} At Bahama Breeze, the parties met as planned. Johnson retrieved the bag with the gun inside of it from the backseat of Sims' car and placed it in the trunk of Kader's car. (Tr. 178.) Although Johnson and Sims provided Kader with the gun, they did not provide the clip or any ammunition. (Tr. 173.) Kader was anxious to see the gun and opened the bag after it was placed in his trunk. (Tr. 223.)
 {¶ 35} Thus, in viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could find the essential elements of conspiracy to commit kidnapping beyond a reasonable doubt.
 {¶ 36} Kader's first assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER TWO
 "The jury verdict was against the manifest weight of the evidence." *Page 11 
 {¶ 37} Kader also argues that the verdict is against the manifest weight of the evidence.
 {¶ 38} The Ohio Supreme Court set forth the following standard for evaluating a claim that a verdict is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 39} In applying the facts set forth in Kader's first assignment of error to the standard for evaluating a manifest weight of the evidence claim, in reviewing the entire record, in weighing the evidence and all reasonable inferences, in considering the credibility of the witnesses and in resolving conflicts in the evidence, we cannot find that the jury clearly lost its way and created a manifest miscarriage of justice.
 {¶ 40} The facts reveal that Kader conspired with Hamdan, Johnson, and Sims to kidnap Williams. On June 18, 2006, Kader revealed his plan to Hamdan. On June 19, 2006, Kader, Hamdan, and Johnson met at Bahama Breeze, in which Johnson agreed to provide Kader a gun to further his plan. On June 23, 2006, Kader, Hamdan, Johnson, and Sims met in order to supply Kader with the gun. *Page 12 
 {¶ 41} Kader detailed his plan to Hamdan. Kader planned to scare Williams into paying the debt by restraining him for up to two or three days, torturing him. Kader considered the requisite supplies. Kader also considered shooting himself in the leg and blaming Williams for his injury, so that if Williams did not repay the debt at least he would go to jail. Kader also considered bringing Williams' mother and sister in front of him to further convince him to pay the debt. Thus,
 {¶ 42} Kader's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ANTHONY O. CALABRESE, JR., J., and MARY J. BOYLE, J., CONCUR *Page 1